OPINION OF THE COURT
Lewis L. Douglass, J.
The question before this court is whether this defendant, who was convicted, after a trial by jury, of attempted arson in the third degree, burglary in the third degree, reckless endangerment in the first degree (all class D felonies), and criminal mischief in the third degree (a class E felony), must be sentenced as a predicate felon.
In October of 1983, the defendant, age 20, after having an argument with his girlfriend earlier in the evening, entered a plant nursery near his home at about 1:15 a.m. and began to smash pumpkins, overturn flower pots, and started a fire in a bale of hay in a shed and ignited newspapers in the nursery office.
He was arrested by officers who responded with the fire fighters. The nursery owners estimated that the damage was approximately $500. There was no prior relationship between the defendant and the owners.
Defendant, at the trial, denied starting the fire or being on the nursery premises, and claimed that he was arrested as he was walking past the nursery to his home. The evidence, however, fully supports the jury’s finding that the defendant, for reasons never fully explained, acted in a wrongful and irresponsible *222 manner, causing damage to an innocent businessperson, resulting in his conviction on each count in the indictment.
A year prior to that episode the defendant was arrested, for the first time, and charged with assault. He pleaded guilty to that charge, was placed on probation, and therefore stands before this court, if that prior felony conviction is valid, as a predicate felon, leaving this court no alternative but to impose a minimum sentence of 2 to 4 years (Penal Law, § 70.06, subd 1, par [a]). The plea to that assault conviction is based on the claim that the defendant struck his employer with a hammer, inflicting injuries serious enough to warrant felony prosecution. The employer claims the assault was unprovoked. The defendant, who is frail of body, with delicate features, and whom the Probation Department implies is a homosexual, but which is denied by the defendant and presumably his girlfriend with whom he lives, claims he was defending himself because the complainant made a homosexual advance. The plea minutes in connection with that charge indicate that the complainant was reluctant to testify, and the District Attorneys, in commendable candor and fairness, acknowledge that the complainant was reluctant to testify because of his concern that his homosexuality would be brought out at trial. Complainant was 30; defendant at that time was 19.
If this defendant is to be sentenced to a term of imprisonment of 2 to 4 years, there is the concern that such a sentence would not be imposed because it is the fair response to the stupid act of vandalism in the nursery, nor would it be imposed because this defendant is the kind of recidivist that the predicate sentencing system was designed to incapacitate. Such a sentence would actually be imposed because of the very real possibility that the defendant was subjected to some form of homosexual advance, recognizing, however, that his response to that situation was excessive. These circumstances place upon the sentencing court a special responsibility to examine with great care the legal sufficiency of the plea which apparently constitutes, the predicate felony.[1]
It should also be noted that when the defendant first appeared for sentence three weeks after the verdict, having been re *223 manded on return of the jury’s verdict, he had obviously been assaulted in jail, and the court found it necessary to indorse his commitment papers for administrative segregation.[2]
A review of the plea minutes reveals an extraordinarily careful recitation of the rights that the defendant gave up by pleading guilty. The challenge to the validity of the predicate, however, is not on the usual grounds that the plea allocution was defective, but rather on the grounds that the defendant’s lawyer, unknown to the Judge who took the plea, caused the defendant to believe that he could not have a trial because he did not have enough money to pay for the trial.[3]
At the predicate hearing the defendant testified that after his arrest on the assault, where he was initially told the charge would be attempted murder, his girlfriend contacted a lawyer who came to the precinct and told him that his fee would be $25,000. Defendant said that he gave the lawyer a piece of gold jewelry (apparently as partial payment or perhaps as evidence of good faith). He said he made a cash payment of $150, other cash payments totaling $800, and said he was given $100 towards the fee because he agreed to stand on line to get movie tickets for the lawyer’s children. He further testified that at a court appearance following arraignment he was told by the lawyer that he should “cop a plea and get probation” since he could not afford the expense of a full trial which he understood to be $25,000. The probation report indicates that the defendant was unemployed, his mother is obviously a working-class person, there is no husband; $25,000 was totally impossible, even assuming it to be reasonable. He further testified that the lawyer never told him that if he could not afford to pay a retained lawyer, he would be entitled to a free lawyer.
His girlfriend testified that she was at the precinct when the defendant was arrested and was aware that the fee was $25,000. His mother testified that she was not involved in conversations with the lawyer in regard to the first case, but after the defen *224 dont was arrested on this arson charge, the same lawyer told her the fee would be $25,000 and suggested that she raise it by placing a mortgage on her home. She refused and told the lawyer that if that were the case her son would have to get a Public Defender. There is nothing in the record to indicate that the defendant knew that he would be entitled to a free lawyer once he has already entered into a private retainer. What is significant about the mother’s testimony is that $25,000 seems to be the going rate, before any evaluation is made about the complexity of the case.
That lawyer, in response to a letter from the defendant’s present lawyer who has been made available through the Legal Aid Society, indicated that when he was initially retained he never discussed a fee, that he received no payment from the defendant, and makes the point, as might be expected, that under the canons of ethics he would have been bound to represent the defendant for trial, and goes on to say that his “word is his bond” and that since he promised to defend the defendant through a trial, he would do so.
Following the defendant’s testimony the prosecutor asked for a continuance of the hearing so that she might have the opportunity to bring in the defendant’s previous lawyer as a witness. At the continued hearing the lawyer testified that he knew the defendant and his girlfriend for some months prior to the defendant’s first arrest. He testified that he, the defendant, and his girlfriend were at an after-hours club at 5:00 a.m. when the defendant was arrested for the assault and that at the girlfriend’s request he told the arresting officers that he was the defendant’s lawyer. He acknowledges that he eventually told the defendant his fee would be $25,000 to handle the case “through completion”. He acknowledged the receipt of approximately $800 from the defendant and his girlfriend, but denies that these payments were toward the legal fee, but rather, he claims they represented repayments of prior loans he made to the defendant and payments of money the defendant owed to him because in the past, when the defendant and his girlfriend had no place to live, he allowed them to live with him, in return for their agreement to share expenses. The lawyer further testified that on the day the plea was entered he explained to the defendant all of his options, and he acknowledges that he did say to the defendant “his fee would be $5,000 if the defendant pied, but if he went to trial the fee would be $25,000.”
He also reiterated the position he took in the letter to the defendant’s present attorney, that he would have honored his *225 commitment to defendant De Carlo, through a trial, even if he could not raise the $25,000.
In determining whether the defendant’s previous plea is valid for the purposes of being treated as a predicate, the question is not what ritual was used when the plea was entered, but rather, did the defendant know that he was giving up substantial rights. In this case, did he know that he was giving up his right to a trial even if he couldn’t pay the retained lawyer’s fee of $25,000 (People v Harris, 61 NY2d 9).
As this court viewed the defendant’s demeanor, it concludes that he was testifying truthfully when he said he entered the plea because he was under the impression that he did not have enough funds for a trial. In assessing the defendant’s credibility on this issue, the court finds it significant that the defendant never suggested that he pleaded guilty because he did not want to run the risk of conviction and thus the possibility of a jail sentence, but he clearly stated that he entered the plea because he was told he didn’t have sufficient funds to mount a defense. That explanation seems particularly believable in connection with the plea on the assault charge since there were no witnesses, and without passing judgment on the appropriateness of the defendant’s action, those familiar with juries can obviously recognize the fact that the defense which might have been offered is frequently successful before jurors, particularly in view of the defendant’s appearance and the disparity between the complainant’s and defendant’s age, and the complainant’s homosexuality.
Moreover, the defendant’s believability is further enhanced by the lawyer’s admission that he quoted a fee of $25,000 to proceed “through completion”, but agreed to reduce the fee to $5,000 if the defendant entered a plea rather than proceed to trial.
Since this court believes the defendant entered a plea because he did not have what he was led to believe were sufficient funds to mount a trial defense, it follows that the plea was entered in violation of the defendant’s constitutional rights and thus may not stand as a predicate felony (CPL 400.21, subd 7, par [b]).

. Although not persuasive to this court, an argument is sometimes advanced that those who reject plea bargain offers and proceed to trial, thus causing the State to incur expenses and subjecting the crime victim to the additional inconvenience of trial, forfeit any special concern other than those considerations mandated by law. Even accepting the validity of that argument, it should be noted that the mandatory sentencing provisions prevented any meaningful negotiation since under these provisions the prosecutor’s offer could only have been a minimum two years in State prison.

. It might be observed that this court served as Executive Deputy Commissioner of the New York State Prison System and is particularly aware that those inmates who, because of frailty, must serve their prison sentences in administrative segregation, undergo a more intense form of punishment, even if their sentence length is eqiial, since these inmates are effectively deprived of interaction with other inmates, and the prison officials, for the inmates’ own protection, cannot allow them to participate in prison programs routinely made available to other inmates.

. It might be noted that the plea minutes are so complete that the Judge asked the defendant whether he was satisfied with his lawyer’s representation, to which he answered, “Yes” but clearly that “Yes” meant, satisfied since he could not afford to pay the full fee of $25,000 as explained hereafter.